(928 P.2d 920)
No. 74,560

DWIGHT D. LAY, *Appellant*, v. STATE OF KANSAS, DEPARTMENT OF TRANSPORTATION, and SECRETARY OF TRANSPORTATION, E. DEAN CARLSON, *Appellees*.

 

 Opinion filed
December 20, 1996. 

*Dan Lykins*, of Bryan, Lykins & Hejtmanek, P.A., of Topeka, for the appellant.

*Vicky S. Johnson*, of the Kansas Department of Transportation, for the appellee.

Before PIERRON, P.J., GERNON and GREEN, JJ.

PIERRON, J.: Dwight D. Lay appeals the district court's granting of summary judgment to the Kansas Department of Transportation (KDOT) in this personal injury case. We affirm.

Plaintiff was driving his 1982 Datsun automobile west on Jackson County Road 142. He was very seriously injured when he rolled his car after failing to negotiate a curve east of the intersection of Jackson County Road 142 and State Highway 75.

There is a hill and curve on County Road 142 as one approaches highway 75 from the east. With the exception of the stop ahead sign and stop sign at Highway 75, which are under the jurisdiction of KDOT, County Road 142 is under the control and maintenance of Jackson County. The stop ahead sign, which was maintained under contract with KDOT, was obscured at the time of the accident by trees and vegetation. There is no evidence a curve warning was not erected because there was a stop warning sign.

There has never been a curve warning sign on County Road 142 east of Highway 75. Ron Karn, a Jackson County Road and Bridge Supervisor, testified that an engineering study had been done of the location prior to plaintiff's accident which concluded a curve warning sign was not required.

KDOT's summary judgment motion and plaintiff's response do not contest that KDOT would not have been responsible for any curve warning sign on County Road 142 because its responsibility was limited to the stop and stop ahead signs, and if a curve sign

was needed based on an engineering study on County Road 142, it would be the county's responsibility to place it.

Plaintiff filed suit against various entities of the Nissan Corporation, the Jackson County Board of Commissioners, and KDOT. Plaintiff subsequently dismissed the Jackson County Board of Commissioners and settled with Nissan. The remaining defendant, KDOT, was granted summary judgment based on a finding that plaintiff could not show that KDOT had a duty to warn of the roadway feature that was involved in the accident or that a causal connection existed between the breach of duty plaintiff alleged and the accident.

Before turning to the issues on appeal, we note the well-established rules relating to the granting of summary judgment in a negligence action:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

The importance of motor vehicle traffic safety has led to many efforts to establish and standardize its regulation. Pursuant to K.S.A. 8-2003, KDOT is required to adopt a manual which conforms as much as possible to the most recent edition of the Manual on Uniform Traffic Control Devices (MUTCD) for streets and highways. All parties agree that the 1988 edition was legally applicable on September 30, 1992. It sets forth certain warrants or specifications describing the physical requirements necessary to justify the authorization and use of the various warning signs recommended. Pertinent sections of the manual provide in part:

2A-30. "All traffic signs should be kept in proper position, clean and legible at all times. Damaged signs should be replaced without undue delay."

. . . .

"Special attention and necessary action should be taken to see that weeds, trees, shrubbery and construction materials do not obscure the face of any sign." p. 2A-12.

2C-1. "Warning signs are used when it is deemed necessary to warn traffic of existing or potentially hazardous conditions on or adjacent to a highway or street." p. 2C-1.

2C-3. "Since warning signs are primarily for the benefit of the driver who is unacquainted with the road, it is very important that care be given to the placement of such signs. Warning signs should provide adequate time for the driver to perceive, identify, decide, and perform any necessary maneuver." p. 2C-2.

2C-5. "The Curve sign (W1-2R or 2L) may be used where engineering investigations of roadway, geometric, and operating conditions show the recommended speed on the curve to be greater than 30 miles per hour and equal to less than the speed limit established by law or by regulation for that section of highway. Additional protection may be provided by use of the Advisory Speed plate (sec. 2C-35)." p. 2C-3.

2C-15. "A STOP AHEAD sign is intended for use on an approach to a STOP sign that is not visible for a sufficient distance to permit the driver to bring his vehicle to a stop at the STOP sign. Obstruction(s) causing the limited visibility may be permanent or intermittent. p. 2C-8.

Plaintiff argues that the district court erred by finding he failed to establish a causal link between his injury and KDOT's breach of duty. His states his claim is derived from the general liability for negligence created by the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.* He alleges negligent inspection of KDOT's stop ahead sign on County Road 142, and negligent maintenance of KDOT's stop ahead sign on County Road 142. He argues the evidence shows that but for the obscured sign, the accident would not have occurred.

Plaintiff cites *C.J.W. v. State*, 253 Kan. 1, Syl. ¶ 1, 853 P.2d 4 (1993), where the court explained the general principles of a cause of action based on negligence:

"Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. Further, if recovery is to be had for such negligence, the injured party must show: (1) a causal connection between the duty breached and the injury received; and (2) he or she was damaged by the negligence.

Whether a duty exists is a question of law. Whether the duty has been breached is a question of fact."

Ordinarily, causation, like negligence, is determined by a jury. *St. Clair v. Denny*, 245 Kan. 414, 417, 781 P.2d 1043 (1989). Usually, a determination of the presence or absence of negligence should be left to the trier of fact. *Stetler v. Fosha*, 9 Kan. App. 2d 519, 522, 682 P.2d 682, *rev. denied* 236 Kan. 877 (1984); see also *Schmeck v. City of Shawnee*, 232 Kan. 11, 27, 651 P.2d 585 (1982) (negligence, contributory negligence, and proximate cause are all issues for the jury's determination). Although the question of whether a defendant's actions proximately caused a plaintiff's injury is normally a question of fact for the jury, where the facts of a case are susceptible to only one conclusion, the question is one of law and may be properly subject to summary judgment. *Baker v. City of Garden City*, 240 Kan. 554, 557, 731 P.2d 278 (1987).

KDOT was negligent in its maintenance of the stop ahead sign. KDOT does not dispute that the sign was obstructed by vegetation. Under Kansas statutory law and the MUTCD, KDOT had a duty to properly maintain the stop ahead sign, and it breached that duty by permitting the sign to become obstructed. However, plaintiff must establish causation in order to recover for KDOT's negligence.

The court in *Baker v. City of Garden City*, 240 Kan. 554, Syl. ¶ 5, discussed the causation necessary to establish a negligence cause of action:

"In order to recover in a negligence action, the breach of duty must be the actual and proximate cause of the injury. The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act."

In *Baker*, the court quoted Prosser and Keeton on Torts § 41, pp. 269-70 (5th ed. 1984), for the burden of proof required of a plaintiff on the issue of causation:

" 'The plaintiff is not, however, required to prove the case beyond a reasonable doubt. The plaintiff need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough to introduce evidence from which

reasonable persons may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no one can say with absolute certainty what would have occurred if the defendant had acted otherwise. Proof of what we call the relation of cause and effect, that of necessary antecedent and inevitable consequence, can be nothing more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions.' If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists.' " 240 Kan. at 559.

In the instant case, plaintiff was injured because he drove his automobile into a curve at a speed greater than he could control. To recover damages from KDOT arising out of this accident, he must show a particular duty was owed him by KDOT, the duty was breached, and he suffered damages as a proximate result of the breach.

The county, not KDOT, was responsible for identifying and warning motorists of potentially hazardous curves. Plaintiff does not even contend a curve warning sign was warranted, yet claims causal negligence on KDOT's part for his accident in allowing its stop ahead sign to be obscured by foliage. Plaintiff says he would have slowed down and not gone off the road if he had seen the sign.

An obligation to warn is created only to guard against a particular risk. Prosser and Keeton on Torts § 43, p. 286 (5th ed. 1984). Traffic signage regulations are intended to warn road travelers of particular risks or types of danger. Regulations such as these do not create duties to other classes of persons or for other risks. The risk KDOT was responsible to warn of was the county road-highway intersection. That risk was unrelated to this accident.

Specifically, KDOT's duty was to warn motorists that the county road intersected with a highway ahead, which intersection was controlled by a stop sign. From KDOT's standpoint, the curve was a problem because it delayed when a motorist could see the stop sign. The obscured sign in question was quite some distance from the intersection because of the lay of the land. At oral argument, counsel for plaintiff stated the plaintiff's skid marks, where he be-

gan to have problems, started about 457 feet from the intersection. That obviously had nothing to do with the intersection. In fact, there is no contention the intersection itself had anything to do with the accident.

The conceptual difficulty here is that although there was negligence on KDOT's part, it was not a proximate cause of this accident. It was "negligence in the air." That is not actionable negligence under Kansas law.

Essentially, the plaintiff is skillfully attempting to reestablish the "but for" theory of causality and liability in Kansas, which was long ago recognized as being incompatible with a proximate cause analysis. See *Jefferson v. Clark*, 190 Kan. 520, 376 P.2d 923 (1962).

Under these very peculiar facts (neither the parties nor the court members have found close factually relevant precedent) it cannot be shown that KDOT's negligence was a legal proximate cause of plaintiff leaving the road.

To illustrate the difficulty in holding KDOT's negligence was a proximate cause of this accident, let us assume the risk to be warned of had been a railroad crossing instead of a stop sign. If a railroad crossing ahead sign had been obscured, would that sign's maintainer share responsibility for the accident? Consider also if the damage here had been caused by the plaintiff striking an errant deer on the road, which evidence tended to show might well have been avoided had the driver slowed down after seeing the stop ahead sign in question. Would KDOT be partially responsible for that accident? In either hypothetical the plaintiff could argue, as he does here, that but for KDOT's negligence, he would have slowed down and avoided the accident.

A final problem with plaintiff's theory is demonstrated by asking precisely how a jury would be instructed to assess fault and negligence to KDOT (but not the county) under these facts. That would be a very perplexing task.

There were other factual reasons given by the trial court to grant summary judgement. We need not discuss them.

We affirm the trial court's well-reasoned decision.

Affirmed.

GERNON, J., dissenting: I respectfully dissent. I believe there are enough disputed facts to deny summary judgment and allow a determination of causation by a jury. I would reverse and remand for a trial.

The majority opinion agrees that KDOT was negligent in the maintenance of the stop ahead sign. KDOT does not dispute that the sign was obscured by vegetation. The only issue then, according to the majority, is whether that breach of duty established causation. In my view, this question alone takes it out of the realm of summary judgment. Causation, like negligence, is determined by a jury. *St. Clair v. Denny*, 245 Kan. 414, 417, 781 P.2d 1043 (1989).

A determination of the presence or absence of negligence should be left to the trier of fact. See *Stetler v. Fosha*, 9 Kan. App. 2d 519, 522, 682 P.2d 682, *rev. denied* 236 Kan. 877 (1984). "The persuasiveness of testimony is for the jury's consideration; not this court on appeal." *Stucky v. Johnson*, 213 Kan. 738, 739, 518 P.2d 937 (1974).

Lay cites *Toumberlin v. Haas*, 236 Kan. 138, Syl. ¶ 2, 689 P.2d 808 (1984), where the plaintiffs were injured when two vehicles collided at the intersection of two low-volume county roads. The intersection was not controlled by any type of traffic control device. The plaintiffs presented no evidence that signs of any type were legally required under the Manual on Uniform Traffic Control Devices. The county engineer testified that both of the roads were low-volume roads, which, in his judgment, did not justify or require any type of traffic control sign. At the close of evidence, the trial court ruled that the county's duty to place warning signs at the intersection was discretionary under the Kansas Tort Claims Act (KTCA), effective July 1, 1979, and, therefore, the county was not liable to plaintiffs for damages.

On appeal, the Supreme Court discussed the question of what duty the State bears since the passage of the KTCA. The *Toumberlin* court held: "Although the statutory liability of the state, counties and townships for defects in highways was repealed by the Tort Claims Act, a duty to maintain the highways remains under the general liability for negligence created by the Act." 236 Kan. 138, Syl. ¶ 2.

With regard to KDOT's notice of the obstructed stop ahead sign, the record contains deposition testimony from KDOT's workers that they reset the stop ahead sign in question approximately 1 to 3 weeks before Lay's accident. Lay cites *Rollins v. Kansas Dept. of Transportation*, 238 Kan. 453, 458, 711 P.2d 1330 (1985), where the court stated: "[I]n doing highway maintenance work, the duty under the tort claims act, absent any statutory exceptions, which KDOT owes the public is the same that would be required of a private individual or contractor doing the same work."

Lay argues it is obvious that the KDOT employees who reset the sign did not act with due care when they inspected/repaired the sign because it was completely covered by weeds and vegetation, as demonstrated by pictures taken the day following the accident.

The precise question before this court is not whether a trier of fact would find causation but whether it was proper for the trial judge to rule on the causation issue. Here, the trial court had before it an affidavit of the plaintiff which was part of his response to the motion for summary judgment. The affidavit states in part:

"Since my accident, I have reviewed many documents regarding my accident, including the following:

. . . .

"3. A night video of County Road 142 that was taken during the summer of 1993 by my brother while I was in a car with him. This night video partially depicts what I saw on the night of my September 30, 1992 accident on County Road 142. This video dramatically shows that a Stop Ahead sign can easily be seen at night on County Road 142 if the sign is not covered by vegetation. I could easily see the Stop Ahead sign during the summer of 1993 while I was a passenger in my father's car going west on County Road 142 the same direction I was going at the time of my accident.

"Prior to September 30, 1992, I knew a Stop Ahead sign meant there was some type of obstruction before the Stop sign. When I saw a Stop Ahead sign before my accident, I would always slow down and look for the obstruction and the Stop sign.

"Prior to my accident, I had never been involved in any type of accident as a driver, nor had I ever received any type of traffic citation.

"If the Stop Ahead sign was not covered by trees and weeds on September 30, 1992, then I know I would have slowed down, after I saw the sign, and would have seen the obstruction (the curve) without any problem."

The district court's granting of summary judgment to KDOT on the issue of causation is equivalent to a ruling that either no evidence was presented on causation or that causation was undisputed and that reasonable persons could not draw differing inferences and arrive at opposing conclusions. See *Sampson v. Hunt*, 233 Kan. 572, 578, 665 P.2d 743 (1983). Clearly, causation was disputed. Since the district court's ruling can only be based on the lack of presentation of causation evidence, the district court's decision, in my view, is not supported by the record and must be reversed.

KDOT states the record contains no evidence that as a matter of traffic engineering judgment: (1) a warning was needed for the curve; (2) a separate curve warning was not needed for the curve; (3) Jackson County did not place a curve warning sign because of the stop ahead sign; or (4) the presence of a stop ahead sign would have affected the decision one way or the other.

It would seem to follow logically that the necessity of using a stop ahead sign arises because the stop sign is either obstructed from the driver's view or placed in such a location so as not to be visible from a long enough distance for the ordinary driver to reduce his or her speed when approaching the stop sign. It is uncontested here that it was KDOT's duty to place a sign warning of a stop sign ahead. The question which a jury should have the opportunity to decide is whether the obstruction of that stop ahead sign became the cause of the accident.

I would reverse and remand for a trial.