No. 56,062

KENNETH L. TOUMBERLIN, *Appellant,* v. GEORGE P. HAAS, *et al.,* *Appellees,* and CORRINNE M. TOUMBERLIN, *Appellant,* v. GEORGE P. HAAS, *et al., Appellees.*

(689 P.2d 808)

Opinion filed October 26, 1984.

*SueAnn V. Schultz,* of Burns & Burns, P.A., of Lyndon, argued the cause and *Clyde M. Burns,* of the same firm, was with her on the brief for appellants.

*R. Michael Latimer,* of Skoog & Latimer, of Ottawa, argued the cause and was on the brief for appellee George P. Haas.

*Wendell J. Barker,* county attorney, argued the cause and was on the brief for appellee, Franklin County Board of Commissioners.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by plaintiffs, in two comparative negligence actions, from orders of the trial court granting directed verdicts in favor of the defendant, Board of County

Commissioners of Franklin County, Kansas (Franklin County), and that portion of the jury's verdict which contributed 10% of the fault for the vehicle collision to the plaintiff, Corrinne M. Toumberlin. Separate cases were filed on behalf of the plaintiffs, Kenneth L. Toumberlin, and his wife, Corrinne M. Toumberlin. The cases were consolidated for trial, remain consolidated on appeal, and were transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c). The facts will be set forth in some detail.

The cases arose out of the collision of two pickup trucks, which occurred on September 10, 1982, at the intersection of two county roads northwest of Ottawa in Franklin County. Plaintiff Kenneth L. Toumberlin, accompanied by his wife, plaintiff Corrinne M. Toumberlin, was driving north in his pickup truck. Defendant George P. Haas was westbound in his pickup truck. The two trucks collided in the intersection, both plaintiffs sustained physical injuries, and both vehicles suffered major damage. The intersection was not controlled by any type of traffic sign on either road.

Plaintiffs sued Haas and Franklin County, alleging negligence by Haas in the operation of his vehicle, and by Franklin County for failing to place proper warning signs at the intersection and for failing to clear away brush growing along the southeast corner of the intersection, which plaintiffs claimed obstructed their vision to the east. At trial plaintiffs testified they had lived near the intersection for approximately four years before the accident, and prior to the collision they were thoroughly familiar with the conditions at the intersection. There was conflicting testimony regarding whether Kenneth L. Toumberlin brought his vehicle to a stop upon approaching the intersection. Both plaintiffs testified that he did stop. However, an accident reconstruction expert called as a defense witness testified plaintiff's vehicle was traveling at a speed of approximately thirty-one miles per hour when the collision occurred. The sheriff's deputy who investigated the accident testified that when he positioned his patrol vehicle at the location where plaintiffs claimed they stopped, he had unobstructed vision for over a quarter of a mile to the east in the direction from which Haas had approached the intersection. Plaintiffs produced testimony from neighbors that the view was totally obstructed by weeds, trees and brush growing along the south side of the east-west road.

Plaintiffs presented no evidence that signs of any type were legally required under the Manual on Uniform Traffic Control Devices adopted pursuant to K.S.A. 8-2003. The Franklin County engineer testified, on behalf of the county, that both of the roads in question were low-volume roads which, in his professional judgment, did not justify or require any type of traffic control sign. He also testified that if he were to install signs at the intersection, he would place stop signs on the north-south road, the road on which plaintiffs testified they actually stopped their vehicle prior to entering the intersection. Plaintiffs also testified that neither of them saw the Haas vehicle until they were in the intersection and the defendant's truck hit them. Although defendant Haas testified he tried to stop, the front of his vehicle collided with the right front side of the plaintiffs' truck.

At the close of all the evidence the trial court ruled that the County's duty to place warning signs at the intersection and clear away the brush was discretionary under the Kansas Tort Claims Act (KTCA), K.S.A. 1983 Supp. 75-6101 *et seq.,* and therefore the County was not liable to plaintiffs in damages. The court also noted that as plaintiffs testified they actually stopped at the intersection and looked both ways, the absence of a sign which would have required the same thing was "immaterial."

Although Franklin County was held immune from liability, its fault was nevertheless submitted to the jury for comparison with that of the other parties. The jury assessed fault for the collision 50% to Kenneth Toumberlin, 10% to Corrinne Toumberlin, 20% to George Haas, and 20% to Franklin County. Both plaintiffs were awarded damages.

Plaintiffs have not appealed the jury's findings with respect to damages or its assessment of 50% fault to Kenneth Toumberlin. The appeal questions the directed verdict in favor of Franklin County on grounds of governmental immunity under the discretionary act exception to the KTCA, and the jury's assessment of 10% fault to Corrinne Toumberlin.

Plaintiffs' first claim that notwithstanding the provisions of the Kansas Tort Claims Act, this court should declare that the state, counties and townships labor under a common-law duty to maintain roadways under their control in a safe, reasonable manner. In *Carpenter v. Johnson,* 231 Kan. 783, 649 P.2d 400

(1982), Chief Justice Schroeder discussed at length the nature of the duty and obligation owed by the state, counties and townships to maintain public roadways under the KTCA. In *Carpenter* it was asserted that the failure to erect a curve warning sign constituted negligence subjecting the state and county to liability under the KTCA. The defendants, on the other hand, contended that the determination of whether to erect a traffic control sign is strictly discretionary and an exception to the KTCA general rule of liability for negligence. The court stated:

"The Kansas Tort Claims Act, K.S.A. 1981 Supp. 75-6101 *et seq.,* a so-called 'open ended' tort claims act, makes liability the rule and immunity the exception. K.S.A. 1981 Supp. 75-6103(*a*) states the general rule:

'*Subject to the limitations of this act,* each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state.' (Emphasis added.)

See generally Note, *Governmental Liability: The Kansas Tort Claims Act [or The King Can Do Wrong],* 19 Washburn L.J. 260 (1980).

"Although liability is the rule, as emphasized above, it is not a rule without limitations. Exceptions from liability enumerated in K.S.A. 1981 Supp. 75-6104 indicate the legislature has not rejected the concept of immunity. *Robertson v. City of Topeka,* 231 Kan. 358, 360, 644 P.2d 458 (1982). The manner in which the Kansas Tort Claims Act changed prior law remains to be analyzed as specific factual situations come before this court.

"Carpenter, the plaintiff-appellant in this action, argues the general law in Kansas before the Tort Claims Act recognized the right of a person to sue the government for damages sustained resulting from the negligent failure to post warning of a curve or turn. K.S.A. 1978 Supp. 68-419 (repealed L. 1979, ch. 186, § 33) imposed liability for defects on county and township roads. See *e.g., Hampton v. State Highway Commission,* 209 Kan. 565, 498 P.2d 236 (1972); *Carder v. Grandview Township,* 2 Kan. App. 2d 7, 573 P.2d 1121, *rev. denied* 225 Kan. 843 (1978); Annot., 55 A.L.R.2d 1000. Municipalities had a common law liability for street defects. *Grantham v. City of Topeka,* 196 Kan. 393, 411 P.2d 634 (1966). Three specific circumstances convince us this prior law concerning highway defects should not be engrafted onto the Tort Claims Act. First, the legislature specifically repealed the highway defect statutes. Second, under the prior law, the alleged defect was the sole focus of the inquiry regardless of any discretion which might have been exercised. *Hampton v. State Highway Commission,* 209 Kan. at 577-78. Third, under the prior law, no essential distinction existed between defects resulting from maintenance or failure to place signs. Compare *Grantham v. City of Topeka,* 196 Kan. 393, with *Carder v. Grandview Township,* 2 Kan. App. 2d 7. As discussed more fully herein, the Tort Claims Act distinguishes between sign maintenance and sign placement, with the exercise of discretion a significant inquiry with regard to liability for sign placement." *Carpenter v. Johnson,* 231 Kan. at 784-85.

The defendants in *Carpenter* relied upon K.S.A. 1983 Supp. 75-6104(g) for their contention that the determination of whether to erect a traffic sign was an exception in the act which relieved the governmental entity of any liability. This court refused to adopt such a broad interpretation of the act and instead found that "the totality of the circumstances" controlled in determining whether the decision with respect to any particular sign was discretionary in nature and exempt from liability. This court stated:

"In conclusion, the trial court held that K.S.A. 1981 Supp. 75-6104(g), the signing exception of the Kansas Tort Claims Act, constituted an absolute bar, as a matter of law, to any action against a governmental entity for failure to cause the initial placement of any traffic signal, road sign or warning device. In so doing, the trial court reasoned that such determination was a wholly discretionary function expressly excepted from the Kansas Tort Claims Act. We do not agree.

"Whether or not the placement of a warning sign on the particular curve in controversy herein was discretionary or mandatory depends upon the totality of the circumstances involved and may not be determined as a matter of law without regard thereto. We therefore conclude the trial court erred in sustaining the motion for summary judgment in favor of the governmental entities." 231 Kan. at 790.

The trial court decision in *Carpenter* was reached as a matter of law on a motion for summary judgment and not on the totality of the circumstances involved.

In the present case, the trial court's ruling against the plaintiffs on the discretionary nature of the duty of Franklin County came after the conclusion of all the evidence. Plaintiffs had presented absolutely no engineering testimony that the placement of any type of sign at the intersection was warranted or required under the terms of the Manual on Uniform Traffic Control Devices. Plaintiffs presented no engineering studies or accident history regarding the intersection which would have justified any type of sign. The only engineer who did testify stated that no sign was required or justified at the intersection due to the low volume of traffic. Based on the total lack of evidence presented by the plaintiffs to support the proposition that some type of sign was mandated at this intersection, the trial court was clearly correct in ruling that there was insufficient evidence for the case to go to the jury on the issue of whether the placement of a sign was mandatory or discretionary. The only testimony heard by the court supported the proposition that signing at this particular intersection was discretionary.

The trial court also commented that the absence of any traffic control sign had no bearing on the cause of the accident. When entering his order for a directed verdict, the trial judge commented that the plaintiffs had testified that they stopped at the intersection even though there was no sign present. The county engineer had testified that if traffic volume and the lack of any justification for traffic control were to be ignored, he would post stop signs controlling the traffic on the north-south road on which plaintiffs were traveling. Although plaintiffs did not suggest the possibility of some other sort of warning sign, it is clear from the evidence that such a sign would not have prevented the accident since both plaintiffs were admittedly quite familiar with the intersection and traveled through it almost every day. It is obvious that the failure to post a warning or stop sign at this particular intersection could not, under plaintiffs' own evidence, constitute the proximate cause of the collision in this case.

Turning to plaintiffs' contention that Franklin County was negligent in not removing the weeds, brush and other growth along the right-of-way, we are of the opinion that the trial court was also correct in determining no such mandatory duty existed in this case. The evidence is clear that whatever obstruction existed it was not upon the traveled portion of the highway but was alongside it on the remaining right-of-way. The county engineer testified there are over one thousand, seven hundred intersections in Franklin County. Many of them have the view obstructed in various ways by brush, undergrowth, weeds, signs, buildings, structures, etc. While our earlier cases involving obstructions to the view at an intersection were based upon the statutory duty to maintain the highways free from defects, they are still persuasive in considering liability under the KTCA.

In *Lyke v. State Highway Comm.*, 160 Kan. 709, 165 P.2d 228 (1946), an intersection of two highways was obscured because about one-eighth of a mile west of the intersection the highway was located on land that was from three (3) to nine (9) feet lower than the area about the intersection. More importantly, the State maintained large piles of chat, a chat hoist and a road grader near the intersection and off the traveled portion of the roadway. Plaintiff's contentions were stated by the court as follows:

"His allegations are that the piles of chat, the chat hoist and the road grader so interfered with plaintiff's view that he could not see the Beason truck as it

approached the intersection, and also interfered with the view of Beason; that there were no signs along the highway indicating that he was approaching an intersection, and that this interference with his view, and lack of road signs, amounted to a defect in the state highway, for which the highway is liable under G.S. 1935, 68-419." 160 Kan. at 710.

The court rejected all of these contentions and stated:

"If there were obstructions to the view from the side it simply placed upon the plaintiff a greater degree of care in his approach to the intersection." 160 Kan. at 711.

See also *Moore v. State Highway Comm.*, 150 Kan. 314, 92 P.2d 29 (1939); *Bohm v. Racette*, 118 Kan. 670, 236 Pac. 811 (1925). It can be seen that, even when there was a statutory duty to keep highways free from defects, the statute was not thought to create liability for obstructions to vision lying off the traveled portion of the roadway. We do not believe that it was the intention of the legislature to create such a duty by the passage of the KTCA.

There can be no doubt that even with the repeal of the statutory liability for defects in the highways, a duty to maintain the highways remains under the general liability for negligence created by the KTCA. Although the scope of that duty is to be determined on a case-by-case basis and no hard and fast rule can be stated which would cover all possible future factual situations, *Carpenter* makes it clear that the Manual on Uniform Traffic Control Devices is to be used as a guide for state and local highway engineers in exercising their professional judgment as to any particular highway problem. However, whether a particular set of facts falls within any of the exceptions created by K.S.A. 1983 Supp. 75-6104 must be determined by considering "the totality of the circumstances" in the particular case. *Carpenter v. Johnson*, 231 Kan. at 790. We find no error in the trial court's directed verdict in favor of Franklin County. We also find no error in the trial court's instruction to the jury that even though Franklin County was immune from liability under the KTCA its fault, if any, must be considered and determined by the jury. *Wilson v. Probst*, 224 Kan. 459, 581 P.2d 380 (1978).

The last issue on appeal is whether the jury's assessment of 10% negligence to Corrinne M. Toumberlin is contrary to the evidence. When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If

the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict this court should not intervene. *Timsah v. General Motors Corp.*, 225 Kan. 305, Syl. ¶ 1, 591 P.2d 154 (1979). Regarding the passenger's negligence, the trial court's instruction to the jury was as follows:

"If a passenger has knowledge of danger and the circumstances are such that an ordinary person would speak out or take other positive action to avoid injury to himself or herself, then it is his or her duty to do what the ordinary person would do under the circumstances. Unless such knowledge and circumstances exist, the passenger may rely upon the driver to attend to the operation of the vehicle."

The instruction is taken verbatim from PIK Civ. 2d 8.91, and plaintiffs make no contention it was erroneous. Without reviewing the evidence, suffice it to say there was substantial competent evidence which, if believed, supports the jury's verdict and therefore the verdict will not be disturbed on appeal.

The judgment is affirmed.